AZM circumstances also include a threat to an individual's life, imminent destruction of evidence, the imminent escape of a suspect, or a situation where there is a compelling need for official action and no time to secure a warrant. Which was this? Well, we believe two apply here. One was the imminent escape of a suspect, which was the suspect of a theft of taxicab services in the amount of $65. Officers Clinton and Sales responded to a 911 call at approximately 3 o'clock in the morning. But what cause did they have to think he was in this house? Well, they did a protective sweep around the outside and they noticed what were doors that were possibly ajar. This is a point of contention down at the district court. How would they know they were unlocked unless they opened them? Well they looked at them and based on their experience they believe that the doors were unlocked. Well, Counsel, I mean, the police officer's experience isn't different than anyone else's on whether a door is locked or not. I just don't see how you can look at a door that's not ajar and determine whether it's locked or not. Well this was based on their observations at the time. I understand the situation if you read it, you know, from 10,000 feet away that it may not make a lot of sense, but these officers were on the ground and that's what their observations told them. How far was the house from where the cab dropped off the thief? It wasn't very far, I'm not sure about what specific distance it was, but when they arrived the taxi cab driver pointed them in the direction of the house that said that, and stated that the suspect had jogged in that direction in between the houses. So in order to protect their safety and to ensure that other safeties were not in jeopardy. But I mean, was this one of the two houses that the driver said he'd run in between or was this a house further back? No, I believe this is one of the two houses where the taxi cab driver thought he had jogged in between. My recollection counsel is it was one house down, but I'll check on that. But when the first officer initially entered the curtilage, was that the curtilage of the plaintiff's house or was that the neighbor's house? I believe it was the plaintiff's, not the plaintiff's house, but the neighbor's house and then into the plaintiff's house. So immediately after, or shortly after the cab driver pointed, the officer entered the curtilage of another house? Yes. So you're saying there were exigent circumstances, or no, you're saying, yeah, exigent circumstances because this $65 thief might have fled into this house and they felt they needed to go in without a warrant to catch the thief? Well, they thought that maybe the thief had broken into the house and therefore escalating the criminal transgression from a theft of $65 to burglary. So what facts do they base their belief that he was possibly inside the house? The open and unlocked doors. Is that it? Yeah, and also the vicinity of where the taxi cab driver had pointed to where the suspect had jogged. I guess by open you mean the interior door was open? Yes. There was an outside door and then there was an interior door, garage door, leading into the kitchen. But I mean the door, you had to open the door to get in under the plaintiff's version of the facts. So that storm door was closed under his version. Closed, but the interior door. So you could see through the storm door into the house? Yes. Well, that's pretty... You find any case that's even close to saying that those facts amount to exigent circumstances? I know the burden on qualified immunity is the other way around. You might call it a burden to show there's a case that says this is clearly unconstitutional, but do you have a best case to support what the officers concluded? Well, factually, no. I didn't see any cases that aligned perfectly with the situation here. I think the best cases that we thought were instructive were USV Quarterman, which is 877 F3rd 794, which this court decided in 2017, and USV Kunstler, which is F3rd 794. What are the facts that are... Well, in Kunstler, police executed an arrest warrant outside of a house. While they were effectuating the arrest, an occupant in the house came out and started yelling at them, cursing at them for arresting the other party. They arrested her. So they effectuated two arrests outside the house, but then one police officer saw another person standing inside the doorway of the house, and decided to go ahead and conduct a search of the house, where they found a methamphetamine lab and derivative evidence. The defendants tried to move to suppress that evidence, claiming evidence. That's enough. I understand. It's just quite different when they saw somebody in the house. Yeah. Yeah. That's what I said, Judge. The factual background of this case really is kind of an anomaly compared to... What was your other one? You said two exceptions. Quarterman. No, no. Not your other case. You said at the beginning, two exceptions, exigency, chasing the suspect, and then you said there's another one. I believe this is a situation where there was a compelling need for a fish of action, where there was not time to secure a warrant. Police responding to a 911 call, emergency call, where they needed to act, where time was of the essence, in order for them to capture the suspect. So, was the entry into the house to search for the person to protect... Was it to protect the people who were in there? I mean... Yes. I know the subjective intent isn't necessarily controlling, but when you said that there wasn't time for a warrant, that was to search for the individual in this house? Yes. Because the officers, Clinton and Sales, noticed that the door was open or unlocked. They then proceeded to ring the doorbell and knock on the door to get the attention of the occupants. No one... That was to no avail. So then they entered the house to ensure that the suspect had not entered and escalated the criminal transgression from a theft to a burglary. So they wanted to protect the safety of the residents. Is that the idea? Exactly. That they think this might be a burglary, burglary is a crime of violence, they don't want these people to be... Exactly, Your Honor. And I believe this falls under the community caretaker functions exception to the warrant requirement. Was that raised below? I don't believe so. I first raised this in the reply brief. And so I...  Which reply brief? In our court or in the district court? Yes, in our court. In our court. Yeah. Because I believe... Going back to the locked, unlocked door thing. Did they testify, for example, that they pushed a button on the screen door or turned the handle without opening it? I'm wondering if maybe they could have figured out whether it was unlocked without actually opening the door. You know, Your Honor, I'm not positive about that. I don't want to mislead you. Because there might be a way to figure out if a door is locked without actually opening the door. You could turn a knob and if it turns, it's unlocked. I wonder if that's not a search. Not a storm or does it have buttons? Yeah. You push the button and maybe they can find that out without searching, in which case it... I don't know how much it helps them, but you don't remember if they specified how they determined it? No, I don't. Okay. Sorry about that. But as I was saying, I believe there's also the search of the interior of the home falls under the community caretaker functions exception to the warrant requirement. In that situation, the standard is a reasonable belief, which is determined as a less exacting standard than probable cause to enter a residence without a warrant. And so that's what I believe that the officers, Clinton and Sills, did in this situation. The Supreme Court has described community caretaker functions aspect of law enforcement as those activities that are totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. Two cases that we believe that fall in line and support this... Well, you've got a case where a homeowner's 1983 damage action was defeated for invasion of the home by the defense that we were there to protect you. Like I said, like I told Judge Colleton, the facts of this case are pretty dissimilar from anything that I saw. The argument is unique in my experience. We found cases Samuelson v. Olm City, which is 45 F. 3rd, 871, which this court decided in 2006, and Winters v. Adams, 254 F. 3rd, 758, which this court decided in 2001. In Samuelson, the plaintiff called the police to report a possible burglary. When the police got to the plaintiff's house, they found that the plaintiff was acting pretty erratic, and his behavior was pretty strange. So they seized the plaintiff and took him to the hospital, where he was then ordered by a physician to stay over for, I think, 72 hours. Well, we can read the case. Okay. All right. If your clients prevail only on the basis of qualified immunity because not clearly established, what do we do with the district court's grant of partial summary judgment to the plaintiffs, in your view? Well, I believe that it would be reversed. Is the case over?  It was on... What's left? Well, I think this would be the only issue left is the count one of the plaintiff's petition. What's count one? Count one would be the Fourth Amendment violations for the entering and searching. Is there any relief sought other than damages? Not that I know of. Is there any damage relief sought against the defendant or institution in official capacity? Not that I'm not sure. I'm not sure. So it's only a damage claim against individual officers? Yes, because St. Louis County has been dismissed from the case. They were part of count two and count three. So the only ones remaining left are the defendant's, defendant appellant's officers, Michael Clinton and Benjamin Sitts. Okay. So case over if they are entitled to qualified immunity? Exactly. What if the qualified immunity extends only to the entry into the curtilage? What's left? The entry in search of the interior of the appellee's residence. Well, but what's... If the district court is wrong on the curtilage qualified immunity issue, do we just remand or... I don't understand why the district court had to grant partial summary judgment to the plaintiffs. Apparently the court thought that would somehow simplify the trial, but it doesn't simplify the appeal for me. Yes. Yeah, I understand. Yes. Okay. I believe that, I think if you find that they are entitled to qualified immunity for entering the curtilage, I believe that they're entitled to qualified immunity for entering in search of the interior as well. Well, that's your position, but hypothetically, if we divided it out, then wouldn't the case go back for trial on the, well, I see the curtilage part would be out of the case, but the entry to the home, that part of the case would continue. Yeah. Isn't that right? No, I think the district court had granted summary judgment on that. So the plaintiffs would win on that? Yes, plaintiffs would win. What about damages? I'm not positive about the damages. There has to be a trial on that? I would assume so, yes, yes, your honor. So we'd be affirming in part and reversing in part, I guess. Yes, if you found that qualified immunity only applied to the curtilage and not the interior of the residence. And you think it should apply to the whole deal because you don't think there's clear law that this was forbidden? No, not with the community caretaking functions exception to the warrant requirement, which  is here. And even if you just take it from the qualified immunity standpoint, the standard is qualified immunity protects all those except for the plainly incompetent or someone who was knowingly violating the law at the time of the transgression, which I don't believe are the facts here. If there are any further questions, your honor. Thank you. Ms. Stephens? May it please the court. Good morning. The only question before the court today is whether any reasonable, experienced officer would have responded to the taxi driver's 911 call the way the defendants did, by piling speculation upon speculation to intrude not just into the plaintiff's protected curtilage where the same Fourth Amendment test applies, but into the interior of their home and clear into their living room. And the answer to that question is no. There's no reasonable officer who would think that the Fourth Amendment allowed a warrantless curtilage and interior home search in the middle of the night under the circumstances that are presented here. First, I'll discuss why the cases of this court and the Supreme Court compel the conclusion that the defendants' intrusions were not permissible protective sweeps as opposing counsel. Just to confirm something for me, do you have any case that holds that curtilage entry is analyzed the same as home entry for qualified immunity purposes? Your honor, I would... Particularly a clearly established problem. I'm almost sure no, but if you've got one, I would be very interested. I don't think that there has to be a previous case addressing qualified immunity for something to be clearly established. Your honor, you don't have a qualified immunity law. I know that. I'm asking if you've got a precedent in your favor, establishing that because the curtilage is considered part of the home, the qualified immunity analysis, including the clearly established problem, is identical for the two. Well, I would... Because that's illogical to me, but maybe some court has said so. I would direct, your honor, to Florida v. Jardines, of course, and then also to this... To what? To Jardines. Oh, I know Jardines. And then also to this court's decision... But Jardines doesn't come close to answering this question. As to the question of whether curtilage is analyzed the same way as the home, whether the Fourth Amendment protection applies the same in both areas... Only qualified... This explanation for the curtilage entry is far more logical and powerful than for the home entry, and that's what drives qualified immunity analysis. I disagree, your honor, only because the Fourth Amendment analysis is the same. I know you disagree with the preamble, but I'm asking you why I'm focusing on this precedent question. So, perhaps this case would answer your question, your honor. This court's decision in United States v. Wells, which is somewhat similar to the circumstance where a police officer entered into the curtilage of a home, and once he was in the curtilage, he saw that there were some open doors, and that is what led the officer to continue his search into the interior of a building. This court made clear in that case that the curtilage analysis was the same as the interior of the home analysis. So, perhaps that gets closest to answering your question, your honor. I think we agree... Well, I don't know about... He didn't really argue protective sweep. Why don't you focus on what he thinks are his strongest points and tell us whether there's any clearly established law that says this fact pattern, and you know what the Supreme Court has said about having to analyze these questions in the particular circumstances of the situation facing the officers in Fourth Amendment cases. Yes, your honor. Have you got anything that's even close that says this is not sufficient under exigency to chase a suspect or protect people from a potential burglary in the neighborhood and so forth? Yes, your honor. So, I would direct you to Smith v. Kansas City Police Department, which is a qualified immunity to officers who entered a home because they thought a domestic violence suspect was supposed to be in that home. And those officers put forth both a protective sweep rationale and a community caretaking exigent circumstances rationale, and this court rejected those. And that case was decided in 2009, so long before the incident... What was the rationale? Remind me for why they weren't permitted to go in. So, the victim in that case, the domestic violence victim, called the police to report the incident. The police arrived, they saw she was bruised and scraped up, and she also reported that she thought her perpetrator was in his brother's house. So, the police went to the brother's house, the brother answered the door. While they were effecting an arrest of the brother, they saw a person moving inside, so they went inside to do a protective sweep, at which point they discovered the perpetrator in there. This court rejected the exigent circumstances doctrine of community caretaking or emergency aid, and said that because there had been no allegation of any use of a weapon, there was no one acting suspiciously in the home, that was insufficient to make those exigent circumstances exceptions applicable. These are so fact specific. I mean, these guys are saying it's the middle of the night, they're worried that this thief might have fled into this home, and there's an open door, and so they feel like they need to go in and make sure these homeowners are not under some kind of risk of violence, I guess. A risk of confrontation with this thief who's now a burglar. It's just an unusual fact pattern. I'm not surprised, maybe, that you can't find a case that's right on point, but what do we do with that when it comes to qualified immunity? I think there are cases on point for each aspect of the situation here. First, as the court pointed out earlier, the officers went first in between the two neighboring houses from plaintiff's house. They didn't immediately make any connection with plaintiff's property at all. When they arrived, the cab was parked in front of the neighbor's house, and that is the direction where the officer went, which is why he entered plaintiff's property from the backyard. By the time the officers had seen the open door, they were already well inside the protected property of plaintiff's home. They were well inside the curtilage, and in fact, they were right up next to the house shining a flashlight toward the house. Don't you think when there's a suspect running through lawns that it's more reasonable for officers to go into curtilage areas to look for him? I don't think so, Your Honor. I think that idea is foreclosed by the Supreme Court's decision in Jardines, where the court finds that police officers have no additional license to enter property, particularly the curtilage, than any member of the public. So it would be appropriate under those circumstances for a police officer to approach the front door, but that doesn't mean the officer can circulate the house and go right up next to the attached garage. Was there any agency in Jardines? Was there any suspect in the neighborhood or anything like that? I don't think that makes a difference, Your Honor. So if you look at this court's decision in United States v. Selberg, this court considers the open door and finds it not determinative. If you consider this court's decision in United States v. Connor, the court considers the possibility of an ongoing burglary that did not involve any force, whether that is an exigent circumstance, and the court finds no. So I think each element that the police officers are relying on here are insufficient to justify a warrantless entry into either the curtilage or the interior of the plaintiff's home, and I think all of those things were clearly established at the time this incident happened. To clear up a couple of factual issues, the court asked about the storm door. It is in the record that the storm door was latched and, in fact, had an auto-latching mechanism, and that is at page 956 of the joint appendix. That's the plaintiff's deposition. But as far as locked in there? How did they get in it? They opened it up. It was unlocked, right? I believe it was unlocked, yes. There's no evidence that they broke a lock or forced the door. That is correct, Your Honor. Right. But even once they were inside the curtilage, they were conducting a search already at that point. They piled more intrusive searches on top of that by trying the door, opening the door, and entering. You're saying if they went up there and tried to latch, they violated the Fourth Amendment on these facts? Yes, Your Honor. And, in fact... That is... Well, let's just leave the middle of the night for self-protection, then. So the door that the officers went into is not visible from the street, is not visible unless you are right up next to the plaintiff's home on the side of their house, totally obscured from any public thoroughfare. And I think the Supreme Court said pretty conclusively in Jardines that at that stage, the police's ability to... Well, by your argument, even if they had seen him, they would have seen him from a position where they've already violated the Fourth Amendment. Your Honor, if a suspect had been seen... Right? That is the position you're taking this morning. It depends, Your Honor. If they saw the suspect and they had chased him onto the plaintiff's property, I think we would have a different case. In that case, perhaps an exigency would apply. You mean if they saw him on the street? Yeah. But you're saying if they had gone up to... From the camp's position. Sorry. No, I... If they'd gone up to the side door and saw the suspect through the window in the storm door, you're saying they would have already violated the Fourth Amendment and they couldn't have... I guess, I don't know what would have happened then if they'd gone in. You would have said they couldn't go in either because they'd already violated the Fourth Amendment. Well, a motion to suppress would have to be granted because it's an illegal arrest at that point. In a criminal case. In a criminal case. Correct. Oh, you mean for the... I don't think he would have any standing, the burglar. If they had... It wasn't clear to the officers at the time who this house belonged to, right? Or whether the person who had absconded on cab fare, whom they presumed had entered this home, whether he was an occupant of that home or where he might be a burglar. And so if they had seen a person through the door, that would be like a warrantless entry for the purpose of conducting arrest, which this court addressed in United States v. Greer, where it said the police officers could not grab a person through an open door in order to conduct a warrantless arrest, and that the status of the door being open under those circumstances was not determinative. So I think that may be what would happen if they had seen the suspect through the door. Let me come back to that. As I understand your position, if the officers were between the two houses, cab driver had said he ran there, and in order to be between the two houses, they were in the curtilage of one or the other or both, and they saw him enter, they saw him open the garage door and go in there. Everything, now the Fourth Amendment is forever violated. No 1983 plaintiff's win and criminal defendant gets suppression because of that entry of the curtilage. That's what I hear you saying, disconfirm, yes or no. I think there are some assumptions there that I can't say yes or no to. I gave you a hypothetical. You can answer the hypothetical. It would depend on circumstances, Your Honor. What circumstances? These circumstances. So, Your Honor, I don't believe that there was a lawful entry into the curtilage. If there had been a lawful entry into the curtilage and then a suspect had been seen, that seems fine. But the curtilage was already defined at the start of your argument as being the space between the two homes. Right. So, if they were there in the middle of the night tracking up a report of a just completed robbery, they violated the Fourth Amendment. That's your position today. Yes or no? There has to be a separate exception to the warrant requirement for each additional intrusion or each additional warrantless entry. So, if there was a lawful entry into the curtilage and then the hypothetical that you've posed, Your Honor, that applied, that seems fine. But if there is no lawful entry into the curtilage, then… Was there one here? No, you're saying no. It was not allowed. There was not one here. So, you're saying if the police had gone in and captured the burglar in the house, your people might have sued because the police came in and captured this burglar because they went into their yard in order to see him through the door and save them from the burglary? I think there are… And that would become a federal lawsuit? Well, I think there are a lot of presumptions there. No, that's their position you've taken this morning. There was no connection between the burglar and this property. This isn't even where the officer went first. If he was there, there was. Right, but he wasn't there, Your Honor. We know it's a hypothetical, the one that we're giving you. We know it's a hypothetical. It's just we're using it to press the limits of what your position is in this case. If the police had seen a suspect enter into the curtilage and then go into the home, that might create an exigency that would make permissible each of those additional intrusions. They've got a robbery victim saying, I think he went there. If the cab driver here had said something like that, that I was robbed and this person went here, that might work, but he didn't say those things. He ran into the neighborhood and said that. The officers testified that the cab driver said the client went in that quote-unquote general direction and toward that row of houses. That's all they knew. It was one of these houses possibly. Right, and it wasn't the plaintiff's house. He went between two other houses. No, but he could have run there is what they were thinking. So what are the damages? Put the word out to robbers. If you do it in a residential neighborhood and run into a yard, you're safe. I think that this ruling, Your Honor, would be much more narrow than that. Here where there was no connection between the plaintiff's property and the burglar, where there was no noise, no lights, no request for help, no report of a crime at this particular property, it was clearly established at the time that that did not create an exigency that allowed the police to enter that Fourth Amendment-protected property. This Court said in 2012 in the case Ramirez that an exigency cannot be created by mere supposition, and this is a series of suppositions that the police used to conduct increasingly more intrusive searches, first into the backyard, then into the curtilage, then into the attached garage, then down in the basement, then into the kitchen, then into the living room where they encountered Mr. Luer, who had been sleeping. What are the damages here? I mean, the police were trying to help these people, and now they're being sued, and maybe they misunderstood the Fourth Amendment or were overaggressive. But what is the harm to these plaintiffs? Why are they making a federal case out of this? Well, Your Honor, so damages haven't been established yet. That would go back to trial if the Court affirms. But I'm just asking you, what is the evidence of damages that you expect to be presented, and what's the harm that we should understand here in context? So the plaintiffs, particularly Mrs. Steinbach, no longer feel safe in her home. She testified about how she moves furniture in front of doors when she's home by herself because she doesn't know who's going to enter when and for what purpose. And so that is lingering. That's still happening, and that would be a damage that would be addressed. Because these people came in the middle of the night with no cause, in her view, she's now traumatized by it, understandably. That's correct, Your Honor. I see that my time has expired, so if there are no further questions, we would ask that the Court affirm the denial of qualified immunity. Thank you. Mr. Steinbach? His time had expired, Your Honor. I think we understand the issues, and it's been well briefed and argued. We'll take it under advisement.